UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
RENEE MITCHELL,

                        Plaintiff,

            -against-                                        04 Civ. 9189 (CM)(LMS)


VICTORIA HOME, NELLY RAMIREZ, INDIVIDUALLY
AND AS AN EMPLOYEE OF VICTORIA HOME,
FRANK BLUSZCZ, INDIVIDUALLY AND AS A
SPECIAL INVESTIGATOR OF THE ATTORNEY
GENERAL OF THE STATE OF NEW YORK,

                        Defendants.
-------------------------------------------------------------------------x

**MEMORANDUM ORDER AND DECISION GRANTING DEFENDANT VICTORIA
HOME'S MOTION TO DISMISS THE COMPLAINT, GRANTING DEFENDANT
FRANK BLUSZCZ MOTION TO DISMISS CERTAIN CLAIMS, AND DISMISSING
SUA SPONTE THE CLAIMS AGAINST DEFENDANT NELLY RAMIREZ**

McMahon, J.:

        The Amended Complaint filed by Plaintiff Renee Mitchell asserts federal constitutional

claims pursuant to 42 U.S.C. § 1983 as well as several state law claims stemming from the

termination of plaintiff's employment and her subsequent criminal prosecution.

        Defendant Victoria Home, a nursing facility in Ossining, New York, move to dismiss

plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Frank Bluszcz, a

Special Investigator ("SI Bluszcz") in the Medicaid Fraud Control Unit ("MFCU") at the office

("OAG") of Eliot Spitzer, Attorney General of the State of New York ("Attorney General"),

move to dismiss certain claims asserted against him in the Amended Complaint against him

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendant Nelly Ramirez has not moved to

dismiss the claims against her.

For the reasons articulated below, I grant the motions of Victoria Home and SI Bluszcz and I dismiss the claims against Ramirez *sua sponte*.

**Facts**

For the purpose of this motion to dismiss, all non-jurisdictional facts asserted in plaintiff's Amended Complaint are assumed to be true.

Until her termination in 2000, plaintiff Renee Mitchell was a certified nurse's assistant at the Victoria Home ("Victoria Home" or the "Home"), a nursing home in Ossining, New York. Amended Complaint (Am. Cplt.") ¶¶ 10, 29. That year, plaintiff asserts, another Victoria Home employee named Nelly Ramirez ("Ramirez") reported to Victoria Home officials that, on or about January 1, 2000, she had observed plaintiff physically abuse an elderly resident. Id. ¶ 17. Ramirez's report caused the Home to begin investigating plaintiff's alleged conduct. Id. ¶¶ 17, 21.

Plaintiff alleges that, shortly after Ramirez made the report, Victoria Home employees interviewed plaintiff about the alleged incident. Id. ¶ 22. Although plaintiff denied any wrongdoing, the Home fired plaintiff shortly after the incident. Id. ¶¶ 23, 29. Plaintiff claims that Ramirez's report was "inaccurate, misleading and/or false," and that various Victoria Home employees, including Ramirez, conspired to exaggerate the incident to "insulate themselves from potential liability" and to justify plaintiff's termination. Id. ¶¶ 33, 34.

The Amended Complaint states that the Home thereafter reported plaintiff's alleged misconduct to the New York State Department of Health ("DOH"). Id. ¶ 37 Consequently, the OAG's MFCU began an investigation and, according to plaintiff, placed SI Bluszcz in charge. Id. ¶¶ 41, 42. According to plaintiff, SI Bluszcz, although aware of evidence exonerating

plaintiff, sought to "exaggerate, magnify and distort" Ramirez's observations and "fabricate incriminating evidence" against plaintiff, and "conspired" with Ramirez and the Home to "bolster and magnify" Ramirez's accusations by, among other things, preparing a statement for Ramirez – namely, a supporting deposition – that "exaggerated and/or misstated" what Ramirez had observed.  Id. ¶¶ 46-47, 49.  Plaintiff alleges that the supporting deposition executed by Ramirez was written in English and was never translated into Spanish, which according to plaintiff is Ramirez's primary language. Id. ¶¶ 54-56.

Plaintiff alleges that on October 3, 2000, the Attorney General then filed an accusatory instrument against plaintiff, consisting of an information signed by SI Bluszcz and of Ramirez's supporting deposition.  Id. ¶¶ 51, 54; Exh. A.  The accusatory instrument alleged that plaintiff hit and grabbed the elderly resident on the right side of her neck and chest, and that such conduct constituted willful violation of the New York Public Health law and regulations thereunder.  Id. ¶¶ 57, 60.

A Press Release issued by the OAG on October 24, 2000, publicized Attorney General Elliot Spitzer's announcement that plaintiff had been arrested for physically abusing an 85-year-old female patient at an Ossening nursing home on New Years Day. Id. ¶ 64; Declaration of Martha A. Lee, dated May 27, 2005, Exh. B.[1]

---

[1] The press release may be considered on this motion to dismiss because plaintiff references it in paragraph 64 of the Amended Complaint and because this Court may take judicial notice of it as a matter of public record.  See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (holding that, on Rule 12(b)(6) motion, "complaint" includes all papers and exhibits appended to the complaint, all documents incorporated by reference in the complaint, any matters of which judicial notice may be taken, and any documents that plaintiff either possessed or had knowledge of and relied on in bringing suit); Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)(courts may take judicial notice of public documents).

The Amended Complaint alleges that on or about March 12, 2002, plaintiff was tried on the charge set forth in the accusatory instrument before a jury in the Village of Ossining Justice Court, Westchester County. Id. ¶ 65. Ramirez was called as the sole eyewitness against plaintiff and testified through a Spanish translator. Id. ¶ 66. According to plaintiff, Ramirez did not testify that she saw plaintiff hit the elderly resident, but rather that she saw plaintiff "push and hold" the elderly resident as the resident was trying to strike plaintiff. Id. ¶ 67. Ramirez also testified that she had not read the supporting deposition but that it was read to her and that she signed it because she was asked to do so and trusted the person who asked her to sign it. Id. ¶ 68.

The jury found plaintiff guilty, and on June 6, 2002, she was sentenced to 45 days in the county jail and three years probation. Id. ¶ 69; Declaration of George W. Echevarria, dated June 16, 2005, Exh. B. Plaintiff served 30 days of her 45-day sentence. Id. ¶ 70. Plaintiff appealed her conviction and, by order dated November 21, 2003, the Appellate Term reversed the conviction and dismissed the accusatory instrument. Id. ¶¶ 71, 72.

**Prior History**

Plaintiff commenced this action by filing a complaint on November 19, 2004 (the "Original Complaint"), which named five defendants: Victoria Home; Ramirez, individually and as an employee of the Home; SI Bluszcz, individually and in his official capacity; Gerald Epstein, a Special Assistant Attorney General ("SAAG") in the MFCU of the OAG, individually and in his official capacity; and the Attorney General, individually and in his official capacity. See Original Complaint, Caption. The Original Complaint appeared to assert federal constitutional claims under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United

4

States Constitution via 42 U.S.C. § 1983. Id. ¶ 75. Plaintiff also sought to invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367 to assert state law claims for malicious prosecution, wrongful termination, defamation, abuse of process, false arrest, false imprisonment, unlawful detention, and unlawful imprisonment. Id. ¶¶ 9, 74.

On April 8, 2005, SI Bluszcz, SAAG Epstein, and the Attorney General (the "Original State Defendants") moved to dismiss the Original Complaint pursuant to Rules 12(b)(1) and 12(b)(6) and Victoria Home moved to dismiss the Original Complaint against it pursuant to Rule 12(b)(6).

On May 2, 2005, plaintiff filed a memorandum of law in opposition to the Original State Defendants' and Victoria Home's motions to dismiss. On May 3, 2005, however, plaintiff filed the Amended Complaint, thereby superseding the Original Complaint and mooting the first motions to dismiss.

### The Amended Complaint

The Amended Complaint no longer names SAAG Epstein and the Attorney General as defendants, leaving SI Bluszcz, in his individual and official capacities, as the only remaining state defendant, and Victoria Homes and Ramirez as the other remaining defendants. See Am. Cplt., Caption.

The Amended Complaint contains four separate counts. Count I is denominated "42 U.S.C. § 1983 Against Individual Defendants," and "claims damages for the injuries set forth above against Defendants Ramirez, Victoria Home and Bluszcz" for violation of plaintiff's constitutional rights. Am. Cplt. ¶¶ 76-77 (Count I).

In Counts II through IV of the Amended Complaint, plaintiff seeks to invoke the Court's

5

supplemental jurisdiction under 28 U.S.C. § 1367 to assert state law claims for: defamation against Victoria Home and Ramirez (Count II); for unlawful termination against Victoria Home (Count III); and for false arrest, malicious prosecution, and false imprisonment against all three defendants (Count IV).  See id. ¶¶ 7, 76-86.  As for relief, via the Amended Complaint plaintiff continues to seek compensatory damages, costs and expenses, and attorney's fees.  Id., "Wherefore" clause.

**Standards**

For purposes of analyzing a motion to dismiss, the pleadings should be read in the light most favorable to the non-moving party, and the plaintiff's allegations as to the material facts should be taken as true.  See Albright v. Oliver, 510 U.S. 266, 267, 114 S. Ct. 807, 810, 127 L. Ed. 2d 114 (1994); Cooper v. Pate, 378 U.S. 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1991), cert. denied, 504 U.S. 911, 112 S. Ct. 1943, 118 L. Ed. 2d 548 (1992). The court generally must limit its analysis "to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).  In addition, the court may consider public records, including a state court's divorce decree, in deciding a motion to dismiss, even if that document was not incorporated in the complaint by reference. Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir.1998); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only

"when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Phillip v. University of Rochester, 316 F.3d 291, 293 (2d Cir.2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); Kaltman-Glasel v. Dooley, 156 F. Supp. 2d 225, 226 (D.Conn. 2001); see also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002); King v. Simpson, 189 F.3d 284, 286 (2d Cir. 1999). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000). On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff carries the burden of establishing that subject matter jurisdiction exists over the complaint. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996); In re Joint E. & So. Dist. Asbestos Litig., 14 F.3d 726, 730 (2d Cir. 1993); Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983).

**Discussion**

**I. Count I: 42 U.S.C. § 1983 Against Individual Defendants**

Count I of the Amended Complaint is against all defendants and is brought pursuant to 42 U.S.C. § 1983. From the Amended Complaint, it is unclear what federal constitutional "injuries set forth above" plaintiff asserts, but the reference appears to be to paragraph 74 of the Amended Complaint, although Count I explicitly fails to incorporate paragraph 74 by reference. See ¶ 76 (incorporating by reference only paragraphs 1 through 72 into Count I). Paragraph 74 asserts the

following injuries: violations of plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United State Constitution; defamation; unlawful termination; false arrest; malicious prosecution; false imprisonment; and loss of physical liberty. Id. ¶ 74. As clarified (to some extent) in plaintiff's memoranda of law in opposition to the motions to dismiss, the § 1983 claim – the only federal claim asserted – is for the alleged "violation of rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." See Memorandum of Law in Opposition to the Motion of Defendant Victoria Home Seeking Dismissal of the Complaint, dated June 16, 2005 ("Pl. Mem. Opp. Victoria Home") at 1; Memorandum of Law in Opposition to the Motion of the State Defendant Seeking Dismissal of the Complaint, dated June 16, 2005 ("Pl. Mem. Opp. State Defendant") at 1.[2]

**1. Section 1983 Claims Against Victoria Home and Nelly Ramirez**

Neither Victoria Home nor Ramirez is a state actor and therefore, neither is a proper defendant on any claim brought pursuant to § 1983.

In order to prevail in any claim against Victoria Home under § 1983, plaintiff must first show that Victoria Home, a private party, was "acting under color of state law" at the time she allegedly violated Plaintiff's constitutional rights. West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 527 (2d Cir.1996). A private individual can be held liable under § 1983 "only as a 'willful participant in joint activity with the State or its agents.'" Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir.) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142

---

[2] The other causes of action are listed strictly as state law claims pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

(1970)), *cert. denied,* 506 U.S. 819, 113 S. Ct. 66, 121 L. Ed. 2d 33 (1992). "Actions by a private party are deemed state action if 'there is a sufficiently close nexus between the State and the challenged action' that the actions by the private parties 'may be fairly treated as that of the State itself.'" <u>Chan v. City of New York</u>, 1 F.3d 96, 106 (2d Cir. 1993) (citation omitted), *cert. denied sub nom.* 510 U.S. 978, 114 S. Ct. 472, 126 L. Ed. 2d 423 (1993). "The purpose of [the close-nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." <u>Id.</u> (emphasis in original; citations omitted).

The Supreme Court has established three tests to determine whether a private person is deemed to be a "state actor" for purposes of § 1983: (1) the public function test (<u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 842, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982)); (2) the state compulsion test (<u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 170, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)); and (3) the symbiotic relationship or nexus test (<u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715, 725, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961)). Plaintiff fails to establish that Victoria Homes is a state actor under any of these three tests.

In order to make out a claim of state action under the "public function" test, plaintiff must show that Victoria Home's function as a provider of nursing care is "'traditionally the *exclusive* prerogative of the State.'" <u>Rendell-Baker</u>, 457 U.S. at 842 (emphasis in original; citation omitted). Administration of a nursing home facility is not traditionally an *exclusive prerogative* of the state. <u>See</u> <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1012, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)(decisions made in the day-to-day administration of a nursing home are not traditional and exclusive prerogative of the State). Plaintiff thus fails to meet the "public

function" test.

To prevail under the "state compulsion" test, plaintiff must show that the state actor "exercised coercive power or . . . provides such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004. (citations omitted). Plaintiff fails to allege that the OAG engaged in coercive conduct over Victoria Home or any of its employees – including Ramirez – during the nursing home's investigation of patient abuse. Plaintiff thus fails to meet the requirements of the "state compulsion" test.

To prevail under the "symbiotic relationship" test, plaintiff must show that "[t]he State has so far insinuated itself into a position of interdependence with [Victoria Home] . . . that it must be recognized as a joint participant in the challenged activity." Burton, 365 U.S. at 725. Here too, plaintiff fails to allege that the state has any type of interdependent relationship with Victoria Home that the two could be considered joint participants.  Therefore, plaintiff fails to meet the requirements of the "symbiotic relationship" test as well.

As a matter of law, plaintiff has failed to state a claim – under any of the three tests – that Victoria Home, a private not-for-profit corporation, was a state actor for purposes of the Section 1983 claim. Plaintiff therefore cannot maintain a Section 1983 action against Victoria Home, and Count I against Victoria Home is dismissed.  The § 1983 claims against Ramirez are dismissed *sua sponte* for the same reasons.

**2. Section 1983 Claims Against Bluszcz**

As clarified in the plaintiff's memorandum of law, § 1983 claim against SI Bluszcz, alleges that "Bluszcz, acting under color of state law, engaged in conduct both individually and

as a Special Investigator . . . to deprive plaintiff of her rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." See Pl. Mem. Opp. State Defendant at 1.

### a. Fourth Amendment: Federal Claim for False Arrest/False Imprisonment

Although plaintiff purports to assert false arrest and false imprisonment as two independent causes of action, see, e.g., Am. Cplt. ¶ 74(f), (h), false arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion. See, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)(describing false arrest claim as type of false imprisonment claim and stating that claims are analyzed identically), *cert. denied*, 517 U.S. 1189, 116 S. Ct. 1676 (1996); Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996)(quoting Singer).

The elements of a false arrest claim under § 1983 are substantially the same as the elements of a false arrest claim under New York law. See Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003) (citing Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.1992). And, because false arrest is a type of false imprisonment, the two claims have identical elements. Singer, 63 F.3d at 118. For this reason, this decision discusses false arrest and false imprisonment interchangeably.[3]

---

[3] The right against false imprisonment in the criminal prosecution context extends only to pre-trial detention, rendering false arrest and false imprisonment synonymous. See, e.g., Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 237, 129 L. Ed. 2d 383 (1994) (holding that "[i]f there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more"). Accordingly, plaintiff cannot challenge her post-sentencing imprisonment via a false imprisonment claim, whether such claim is premised on federal or state law. See id.; Singer, 63 F.3d at 117 (holding that post-arraignment deprivation of liberty implicates malicious prosecution rather than false arrest).

Under New York law, the elements of a false imprisonment claim are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Broughton v. State, 37 N.Y.2d 451, 456 (1975), *cert. denied,* 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975). Contrary to plaintiff's arguments, a favorable termination of the proceedings is not an element of this tort. Weyant, 101 F.3d at 853 ("while the favorable termination of judicial proceedings is an element of a claim for malicious prosecution, . . . it is not an element of a claim for false arrest") (citing Singer, 63 F.3d at 118).

Although the statute of limitations period is determined by reference to state law, the determination of when a claim accrues is governed by federal law. See Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994). Under New York law, the statute of limitations for § 1983 claims premised on torts such as false arrest or false imprisonment is three years. See Owens v. Okure, 488 U.S. 235, 251, 109 S. Ct. 573, 582, 102 L. Ed. 2d 594 (1989); Wynder v. McMahon, 360 F.3d 73, 76 (2d Cir. 2004). The accrual point of a Section 1983 claim for false arrest depends on whether or not the plaintiff's prevailing on the claim would render her conviction invalid. See Covington v. City of New York, 171 F.3d 117, 123 (2nd Cir. 1999); see also Preston v. State of New York, 223 F. Supp. 2d 452, 467 (S.D.N.Y. 2002).

Plaintiff's relies on Heck, *supra*, 512 U.S. 477 (see, e.g., Pl. Mem. Opp. State Defendant at 2-4), to demonstrate that her federal false arrest and false imprisonment claims did not accrue until November 21, 2003, the date that Appellate Term reversed her conviction. She is wrong. In Heck the Supreme Court was concerned, not with a false-arrest type of claim, but rather with a claim "close[ly] analog[ous]" to the "common-law cause of action for malicious prosecution"

(512 U.S. at 484), a type of claim in which favorable termination of the proceedings is an element. See, e.g., Weyant, 101 F.3d at 853; Broughton v. State, 37 N.Y.2d at 457.

Under Covington, a wrongful arrest claim would not necessarily undermine a criminal conviction, and would therefore accrue at the time of the arrest, "if there were independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest." Covington, 171 F.3d at 123.

In the Amended Complaint, plaintiff does not allege that any evidence used against her at her criminal trial was gathered subsequent to, and thus as a result of, her arrest. To the contrary, she alleges that the evidence used to convict her was procured before her arrest. See, e.g., Am.Cplt. ¶¶ 17, 21-25, 32, 41-48, 51-53. Indeed, none of the evidence that the Amended Complaint asserts was harmful to plaintiff is alleged to have been collected through any interaction with plaintiff at all. Rather, plaintiff's case rests on her allegations that any incriminatory evidence was fabricated by SI Bluszcz and the other defendants, and that any evidence she or her colleague at Victoria Home, Judith McIntosh, gave to defendants was exculpatory, not incriminating. See, e.g., id. ¶¶ 23, 24, 25, 34, 46, 47, 48, 49, 74.

Because plaintiff never alleges that any evidence used against her was derived from her arrest, the accrual date of her § 1983 false arrest/false imprisonment claim was the date of her arrest. See, e.g., Preston, 223 F. Supp. 2d at 467 (finding that accrual date of Section 1983 false arrest claim was date of arrest where evidence relied on at trial was obtained from sources other than plaintiff's arrest, and dismissing claim as time-barred).

The Amended Complaint does not allege either that plaintiff was arrested or that any evidence against her was gathered as a result of any such arrest. Nonetheless, the OAG Press

13

Release she references (see Am. Cplt. ¶ 64), is dated October 24, 2000 (see Lees Decl., Exhibit B), announces that plaintiff's arrest has already occurred, and indicates that she was arraigned on the same day as the press release was issued. Her arrest thus occurred no later than October 24, 2000. Plaintiff's § 1983 false arrest claim accrued no later than that date.

Because plaintiff did not commence this action until November 19, 2004, over four years after her claim accrued and over a year after the three-year limitations period for that claim expired, plaintiff's § 1983 Fourth Amendment violation claims for false arrest/false imprisonment are dismissed for failure to state a claim as time-barred.

**b. Fifth Amendment & Fourteenth Amendment**

Plaintiff also fails to state a claim for violation of her due process rights under the Fifth Amendment. The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials. Dusenbery v. United States, 534 U.S. 161, 167, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002). Any due process rights plaintiff enjoys as against state government officials, like SI Bluszcz, arise solely from the Fourteenth Amendment due process clause. Id. Therefore, in so far as plaintiff's § 1983 claim against SI Bluszcz is based on a violation of her constitutional rights under Fifth Amendment, that claim is dismissed.

As for Fourteenth Amendment due process, plaintiff alleges no deprivation of her liberty separate from that inherent in her §1983 claims for denial of a fair trial, false arrest, false imprisonment, or malicious prosecution. Plaintiff's Fourteenth Amendment claim therefore fails to the same extent as do those claims. See supra, I.2.a. (false arrest/false imprisonment claim time-barred); infra I.2.c. (fair trial claim time-barred). I note that SI Bluszcz does not seek dismissal of plaintiff's federal or state malicious prosecution claims on this motion. See

Defendant Bluszcz's Memorandum of Law in Support of His Motion to Dismiss the Amended

Complaint, dated May 27, 2005, at 14 n.4. Therefore, plaintiff's Fourteenth Amendment claim,

and the corresponding state law claim, survive this motion.

### c. Sixth Amendment

The essence of plaintiff's Sixth Amendment fair trial claim is her allegation that SI

Bluszcz sought to "exaggerate" Ramirez's observations and "fabricate incriminating evidence"

against plaintiff. See, e.g., Am. Cplt. ¶¶ 46-47, 49. Under Second Circuit law, fabrication of

evidence by a law enforcement officer and forwarding of such evidence to prosecutors is

considered inherently harmful, regardless of whether there existed untainted evidence

independently supporting arrest or conviction. See, e.g., Ricciuti v. N.Y.C. Transit Auth., 124

F.3d 123, 129-30 (2d Cir. 1997).

Under New York law, the statute of limitations for § 1983 claims premised on torts such

as fabrication of evidence is three years. See Owens, supra, 488 U.S. at 251. And for statute of

limitations purposes, a § 1983 claim, including a Sixth Amendment fair trial claim, accrues when

the alleged conduct has caused the claimant harm and the claimant knows or has reason to know

of the allegedly impermissible conduct and the resulting harm. Veal, supra, 23 F.3d at 724

(citing Singleton v. New York, 632 F2d 185, 191 (2d Cir 1980). "The reference to 'knowledge of

the injury' does not suggest that the statute does not begin to run until the claimant has received

judicial verification that the defendants' acts were wrongful." Id. (citing Woods v. Candela, 13

F.3d 574, 575-76 (2d Cir. 1994) (claim for unlawful arrest and search accrued when, with

accused's knowledge, those acts occurred, not when appellate court later vacated his conviction);

Mack v. Varelas, 835 F.2d 995, 999 (2d Cir. 1987) (claim based on sheriff's failure to produce a

defense witness at trial accrued when the accused was incarcerated as a result of his conviction, not upon eventual ruling by appellate court as to whether that failure would warrant reversal of conviction). Thus, a fair trial claim premised on fabrication of evidence accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury. See id. at 724-25.

In this case, the accusatory instrument charging plaintiff was signed by SI Bluszcz on October 3, 2000. See Am. Cplt., Exh. A. Under New York law, where, as here, a criminal proceeding is commenced by the filing of an accusatory instrument, arraignment follows shortly after filing. See, e.g., Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997). Since plaintiff was arraigned on October 24, 2000, see Lees Decl. Exhibit B, the accusatory instrument must have been filed between its October 3, 2000 signing and the October 24, 2000 arraignment. Plaintiff's allegations regarding SI Bluszcz's involvement in her case cease as of the time he allegedly prepared, or directed the preparation of, and executed, the accusatory instrument used to initiate plaintiff's criminal proceedings, which means his alleged involvement ceased as of October 3, 2000. See Am. Cplt. ¶¶ 63-73.

Thus, when plaintiff alleges that SI Bluszcz threatened to have Judith McIntosh (plaintiff's former colleague at Victoria Home, who was also terminated) arrested and prosecuted if she did not make an untrue statement implicating plaintiff, (id. ¶ 24, 29, 47), it is evident that the alleged threat cannot have been made later than October 3, 2000. Id. ¶¶ 23, 24, 29, 47, 51. And the Supporting Deposition that was attached to the accusatory instrument was signed by Ramirez on October 3, 2000. Id. ¶¶ 51, 54; Exh. A.

Assuming, as I must, that plaintiff's allegations are true, they indicate that plaintiff knew

or should have known, by October 3, 2000, that SI Bluszcz was allegedly attempting to procure false evidence against her.

As discussed, plaintiff's arrest could have occurred no later than October 24, 2000. See *supra*, I.2.a. (citing Lees Decl., Exh. B). Upon plaintiff's arrest, her a fair trial claim premised on fabrication of evidence accrued because plaintiff knew or should have known that the evidence was fabricated and that she had suffered some injury as a result. See Veal, 23 F.3d at 724-25.

Because plaintiff did not file this action until well over three years after October 24, 2000, i.e., until November 19, 2004, any alleged violation of plaintiff's Sixth Amendment right to a fair trial is time-barred.

### d. Loss of Physical Liberty

Among the injuries that plaintiff alleges is "[l]oss of physical liberty." Am. Cplt. ¶ 74(i). Plaintiff does not allege a § 1983 deprivation of physical liberty separate from that associated with false arrest/imprisonment or malicious prosecution. Therefore, I dismiss this claim as surplusage. Plaintiff can pursue damages for the loss of her liberty on her § 1983 and state claim for malicious prosecution.

## II. Count II: Defamation

Count II is a defamation claim against Victoria Home and Ramirez.

According to the Amended Complaint, all of the allegedly defamatory statements attributable to Victoria Home or Ramirez were made between January 1, 2000 – when Ramirez initially reported the physical abuse (see Am. Cplt. ¶ 17) – and plaintiff's trial, which occurred on or about March 12, 2002. Id. ¶ 65. Therefore the latest possible date on which Victoria Home or Ramirez could have made any of the allegedly defamatory statements mentioned in the

Amended Complaint was on or about March 12, 2002.

Under New York law, an action for "libel, slander, [or] false words causing special damages" must "be commenced within one year." N.Y. C.P.L.R. 215(3). "For the purpose of computing the running of the one year statute of limitations [for defamation], the causes of action accrue on the day the statements were made." Vasile v. Dean Witter Reynolds, Inc., 20 F. Supp 2d 465, 495 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000).

Plaintiff's erroneous argument that under Boose v. City of Rochester, 71 A.D.2d 59, 64-65, 421 N.Y.S.2d 740 (4th Dept. 1979), the statute of limitations for the claims arising in intentional tort did not accrue until November 21, 2003 – the date on which her conviction and sentence were invalidated – has no merit. This case deals with a cause of action for false imprisonment and malicious prosecution and has no applicability to plaintiff's defamation claim. See id.

Because ths action was commenced on November 19, 2004, over two and one half years after the latest date upon which the statute of limitation could have begun to run, the defamation claim is dismissed against Victoria Home as time-barred. For the same reason, this claim is dismissed *sua sponte* as against Ramirez.

**III. Count III: Unlawful Termination**

The third claim in the Amended Complaint is for "unlawful termination" against Victoria Home. The Amended Complaint generally alleges that "the acts of Victoria Home resulted in the unlawful termination of the Plaintiff for which she suffered damages." Am. Cplt. ¶ 82.

Unlawful termination, however, is not a cause of action recognized in New York. Furthermore, it is well settled under New York law that when employment is for an indefinite

term, the employee is considered to be an employee at-will, and that such employment may be terminated by either party for any reason or no reason at all. See Sabetay v. Sterling Drug, 69 N.Y.2d 329, 333 (1987); Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 297 (1983) ("this court has not and does not now recognize a cause of action in tort for abusive or wrongful discharge of an employee; such recognition must await action of the Legislature").

In Murphy, the New York Court of Appeals stated that to recognize such a cause of action "would alter our long-settled rule that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason" Id. at 300; see also Horn v. New York Times, 100 N.Y.2d 85, 91-92 (2003) (noting holding in Murphy); Riccardi v. Cunningham, 291 A.D.2d 547, 548, 737 N.Y.S.2d 871 (2d Dep't 2002) ("This State neither recognizes a tort of wrongful discharge nor requires good faith in an at-will employment relationship") (citation omitted); Rooney v. Tyson, 127 F.3d 295, 296-97 (2d Cir. 1997) (citing holding in Murphy).

The Amended Complaint does not plead the existence of a written contract of employment between plaintiff and Victoria Home, that the job was for a specified duration, or that plaintiff accepted employment on the condition that she could only be discharged for cause. Therefore, plaintiff was an at-will employee and these circumstances do not give rise to a cause of action for wrongful termination. See e.g., Civiletti v. Independence Sav. Bank, 236 A.D.2d 436, 653 N.Y.S.2d 142 (2d Dep't 1997); Mayer v. Publishers Clearing House, 205 A.D.2d 506, 507,613 N.Y.S.2d 190 (2d Dep't 1994).

Lastly, assuming *arguendo* that this cause of action had been predicated upon an enforceable contract, the plaintiff's claim accrued upon her termination from employment. See

<u>Sam v. Church of St. Mark</u>, 293 A.D.2d 663, 664-65, 741 N.Y.S.2d 267 (2d Dep't 2002). Any recovery for an intentional tort involving unlawful termination of plaintiff's employment would be barred by the one year statute of limitations for intentional torts. <u>See</u> N.Y. C.P.L.R. 215(3) (McKinney 2003); <u>Sam</u>, 293 A.D.2d at 665; <u>Gallagher v. Directors Guild of Am., Inc.</u>, 144 A.D.261, 262, 533 N.Y.S.2d 863, 864 (1st Dep't 1988). Although the Amended Complaint does not specify the date of plaintiff's termination by Victoria Home, the events concerning the termination of her employment are generally alleged to have occurred in January 2000. <u>See</u> Am. Cplt. ¶¶ 14-29. Since the events concerning Plaintiff's termination from employment occurred in January 2000 (Am. Cplt. ¶¶ 14-29), the commencement of this action on November 19, 2004 was well beyond the one-year statute of limitations applicable to any wrongful termination claim by Plaintiff.

**IV. Count IV: False Arrest, Malicious Prosecution, and False Imprisonment**

Count IV is for false arrest, malicious prosecution, and false imprisonment against all three defendants. These state law claims are brought pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

Under New York law, false imprisonment and malicious prosecution are independent torts, either of which may arise as a result of a false arrest. <u>See</u> <u>Broughton</u>, *supra*, 37 N.Y.2d at 457 (explaining "[t]he distinction between false imprisonment and malicious prosecution in the area of arrest"); <u>cf.</u>, 59 NY Jur. 2d False Imprisonment § 1 (2005) ("False arrest and false imprisonment are largely synonymous"). Because a cause of action for false arrest is essentially the same tort as false imprisonment (<u>see</u> <u>Blanchfield v. State of New York</u>, 104 Misc 2d 21, 427 N.Y.S.2d 682 (Ct. Cl. 1980)), they will be discussed as one cause of action.

**1. Victoria Home**

   **a. State False Arrest/False Imprisonment Claim**

   Plaintiff has failed to properly plead a false imprisonment claim against Victoria Home. To plead such a claim, plaintiff must allege that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged". Broughton, *supra*, 37 N.Y.2d at 456.

   The Amended Complaint does not allege that Victoria Home had any role in plaintiff's pre-arraignment confinement. The accusatory instrument leading to plaintiff's arrest was filed by the MFCU of the OAG "over nine months after" the underlying incident of resident abuse and Victoria Home's statutorily-required report to the DOH. This was subsequent to the MFCU investigation, and long after plaintiff's termination by Victoria Home. Am. Cplt. ¶¶ 26, 41-42, 53.

   Moreover, "[t]here is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment in effecting an arrest, or in swearing out a criminal complaint so that an arrest is legally authorized". Chapo v. Premier Liquor Corp., 259 A.D.2d 1050, 1051, 688 N.Y.S.2d 342, 343 (4th Dept. 1999) (citing Cobb v. Willis, 208 A.D.2d 1155, 1156, 617 N.Y.S.2d 601, 603 (3d Dept. 1994)). See also Perez v. Charter One FSB, 298 A.D.2d 447, 748 N.Y.S.2d 392, 392 (2d Dept. 2002) (dismissing "false arrest and false imprisonment" claim where defendant "merely supplied information to the police who determined that an arrest was appropriate"); Schrull v. Shafer, 252 A.D.2d 723, 675 N.Y.S.2d 395, 396 (3d Dept. 1998) ("A civilian complainant cannot be held liable for false arrest where he

has purely furnished information to legal authorities, who were then free to use their own judgment as to whether an arrest would be made or criminal charges filed"). In this case, Victoria Home simply made a statutorily-required report to the New York State Department of Health, which presumably directed the matter to the MFCU. Am. Cplt. ¶¶ 37, 41.

Accordingly, plaintiff has failed as a matter of law to allege a claim of false imprisonment as against Victoria Home. The state claims against Ramirez for unlawful arrest/ unlawful imprisonment are dismissed *sua sponte* for the same reasons.

### b. State Malicious Prosecution Claim

Plaintiff's malicious prosecution claim is also meritless. To plead a claim of malicious prosecution, plaintiff must allege: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, and (4) actual malice". Broughton, *supra*, 37 N.Y.2d at 457.

Victoria Home, a private party, is not alleged to have "commenced or continued" any criminal proceeding against the plaintiff (nor is Ramirez). Victoria Home simply made a statutorily-required report to the New York State Department of Health. Am. Cplt. ¶ 37. The Department of Health presumably directed the matter to the MFCU, which conducted its own investigation and determined to filed charges. Am. Cplt. ¶¶ 41-42, 52. Furthermore, plaintiff was not even criminally charged by the State until long after Victoria Home had terminated her. Am. Cplt. ¶¶ 17, 26, 53. Accordingly, Victoria Home's link to plaintiff's prosecution is tenuous at best, and, thus, plaintiff has failed to adequately plead the first element of a claim for malicious prosecution as against Victoria Home. See e.g., Everson v. First Trust & Deposit Co.,

46 A.D.2d 722, 360 N.Y.S.2d 338, 339 (4th Dep't 1974).

Moreover, "[i]t is well settled in this State's jurisprudence that a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for . . . malicious prosecution". Paisley v. Coin Device Corp., 5 A.D.3d 748, 749-50, 773 N.Y.S.2d 582, 583 (2d Dep't 2004) (quotation and citation omitted). The New York Court of Appeals has even held that, where plaintiff alleges that defendant "gave false information" to the authorities, "[t]his is not enough" for a malicious prosecution claim. Al Raschid v. News Syndicate Co., 265 N.Y. 1, 3, 191 N.E. 713, 713 (1934) (citing Barry v. Third Avenue R.R., 51 A.D. 385, 386, 64 N.Y.S. 615 (1st Dep't 1900)). Thus, even assuming, *arguendo*, that the information provided by Victoria Home to the New York State Department of Health was incorrect, no action for malicious prosecution will lie as against Victoria Home.

For these reasons, the state malicious prosecution claim is dismissed as against Victoria Home. And for the same reasons, it is also dismissed as against Ramirez *sua sponte*.

## 2. SI Bluszcz

### a. State False Arrest/False Imprisonment

The statute of limitations for state law false arrest or false imprisonment, an intentional tort, is one year. CPLR 215(3); see, e.g., Gallagher v. Directors Guild, 144 A.D.2d 261, 262, 533 N.Y.S.2d 863, 864 (1st Dep't 1988). The accrual of pendant state law tort claims, such as false arrest, in federal court actions is governed by state law. See, e.g., Walker v. Armco Steel Corp., 446 U.S. 740, 750-51, 100 S.Ct. 1978, 1985 (1980); Piesco v. City of New York, 650 F.Supp.

896, 899-900 (S.D.N.Y. 1987) (following <u>Walker</u>).  In New York, a state claim for false

arrest/false imprisonment accrues when a plaintiff is released from pre-arraignment custody.

<u>Molyneaux v. County of Nassau</u>, 16 N.Y.2d 663, 663, 261 N.Y.S.2d 294, 294 (1965) (holding

that limitations period for state false arrest claim began to run when plaintiff, upon arraignment,

was released on own recognizance); <u>Salman v. Econo Lodge</u>, 303 A.D.2d 923, 923-24, 755

N.Y.S.2d 678, 678-79 (4th Dep't 2003) (same); <u>Palmer v. City of New York</u>, 226 A.D.2d 149,

149, 640 N.Y.S.2d 92, 92 (1st Dep't 1996) (same).[4]

Under these standards, Plaintiff's state false arrest and false imprisonment claims are also

time-barred because plaintiff failed to bring them within a year of her arrest and subsequent

arraignment.  Plaintiff alleges that she was held in custody only after her conviction (<u>see</u> Am.

Cplt. ¶ 70), so her state false arrest/false imprisonment claim cannot have accrued later than the

time of her arrest and subsequent arraignment.  As discussed, the OAG Press Release indicates

that plaintiff was arrested and arraigned no later than October 24, 2000.  <u>See</u> Lees Decl. Exhibit

B; *supra,* Point I.A.  Because the November 19, 2004 filing date of this action is more than four

years after October 24, 2000, plaintiff's state law false arrest claim is time-barred and must

therefore be dismissed for failure to state a claim.

---

[4] Contrary to plaintiff's representation, <u>Huff v. State</u>, 47 Misc.2d 1053, 263 N.Y.S.2d 897
(Ct. Cl. 1965), *reversed in part*, 27 A.D.2d 892, 278 N.Y.S.2d 12 (3d Dep't 1967), does not
undermine the authority of <u>Molyneaux</u> and its progeny as they apply to plaintiff's case.  <u>Huff</u>'s
inaccurate reading of <u>Molyneaux</u> and erroneous ruling on the accrual of false arrest/false
imprisonment claims were overruled on appeal to the Appellate Division, which confirmed that a
false arrest claim accrues at the time of arraignment.  <u>Huff</u>, 27 A.D.2d at 892, 278 N.Y.S.2d at 13
(citing <u>Molyneaux</u>); <u>see also</u> <u>Olson v. State</u>, 71 Misc.2d 1009, 1011, 338 N.Y.S.2d 198, 200 (Ct.
Cl. 1972)(noting Appellate Division's reversal of lower court in <u>Huff</u> and accordingly dismissing
false arrest and false imprisonment claims as untimely).

**b. Malicious Prosecution**

As noted above, SI Bluszcz does not seek dismissal of plaintiff's federal or state malicious prosecution claims on this motion. <u>See</u> Defendant Bluszcz's Memorandum of Law in Support of His Motion to Dismiss the Amended Complaint, dated May 27, 2005, at 14 n.4.

**Conclusion**

For the aforementioned reasons, the motions of Victoria Home and SI Bluszcz are granted and the claims against Ramirez are dismissed *sua sponte*. The remaining malicious prosecution claim (pursuant to § 1983 and state law) against SI Bluszcz will proceed accordingly. Counsel for plaintiff and defendant SI Bluszcz are required to appear at a scheduling conference on Friday, July 15, 2005, at 10:00a.m. Counsel for defendants Victoria Home and Ramirez need not attend.

This constitutes the decision and order of the court.

Date: July 12, 2005

_____
U.S.D.J.


BY FAX TO ALL PARTIES

George W. Echevarria, Esq.
Peter G. Bergmann, Esq.
Martha A. Lees, Esq.